IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARY WICKENKAMP

Plaintiff,

2:15-CV-296-PK

FINDINGS AND RECOMMENDATION

v.

HOSTETTER LAW GROUP, LLP, HOSTETTER KNAPP LLP, D. ZACHARY HOSTETTER, D. RAHN HOSTETTER, BRUCE HAMPTON, VENESE HAMPTON, KEVIN SALI, DAVID ANGELI, REBECCA KNAPP, BENJAMIN N. SOUEDE, SCOTT HAMPTON, and ANGELI LAW GROUP,

Defendants.

PAPAK, Magistrate Judge:

Plaintiff pro se Mary Wickenkamp filed this action against the Hostetter Law Group, LLP ("HLG"), Hostetter Knapp LLP ("HK"), D. Zachary Hostetter ("Zachary"), D. Rahn Hostetter ("Rahn" and, collectively with Zachary, the "Hostetters"), Bruce Hampton ("Bruce"), Venese Hampton ("Venese"), Kevin Sali, and David Angeli on February 19, 2015. Wickenkamp amended her complaint effective April 10, 2015, adding as additional defendants Rebecca

Knapp, Benjamin N. Souede, Marilyn Preston Suarez ("Marilyn"), Efrain Suarez ("Efrain" and, collectively with Marilyn, the "Suarezes"), and the American Bank of Missouri ("ABM"). Wickenkamp amended her complaint a second time on May 4, 2015. By and through her second amended complaint, Wickenkamp stated a total of seventeen claims against the defendants, collectively.

On December 3, 2015, I recommended that all of Wickenkamp's claims be dismissed, certain of them with prejudice and certain of them without, and further recommended both that Wickenkamp be directed to amend her pleading as to any of her claims as to which she believed the identified deficiencies were subject to cure by amendment to restate those claims in a manner compliant with Rule 8 and all other applicable pleading requirements within thirty days and to effect service on any defendant named in any such restated claim who had not yet been served with process herein within thirty days after filing such third amended complaint and that Wickenkamp be advised (i) that should she fail to comply with Rule 8 or other applicable pleading requirements in drafting her third amended complaint, any claims alleged in a noncompliant manner would be subject to dismissal with prejudice, and (ii) that should she fail to serve any named defendant with process within the prescribed time period, her claims would be subject to dismissal with prejudice to the extent alleged against any unserved defendant. On January 31, 2016, Judge Hernandez adopted my recommendations without modification.

On March 2, 2016, Wickenkamp moved for extension of time within which to file her contemplated third amended complaint to March 7, 2016, and on March 7, 2016, she filed her third amended complaint, abandoning her claims to the extent alleged against the Suarezes and ABM, and adding as new defendants Scott Hampton ("Scott" and, collectively with Bruce and

Vanese, the"Hamptons") and the Angeli Law Group ("ALG" and, collectively with Angeli, Sali, and Souede, the "ALG defendants"). By and through her third amended complaint, Wickenkamp alleges (i) the liability of defendants Bruce, Vanese, Knapp, Zachary, HK, HLG, and the ALG defendants under Oregon common law for invasion of privacy by false light arising out of allegations made by Bruce and Vanese by and through Knapp, Zachary, HK, HLG, and the ALG defendants in their capacities as Bruce and Vanese's legal representatives in the course of litigation against various third parties to this lawsuit, and (ii) the liability of the Hamptons, Knapp, the Hostetters, HK, and HLG under Oregon common law for invasion of privacy by intrusion upon seclusion arising out of those defendants' conduct in recording telephone conversations between plaintiff and her husband. Wickenkamp seeks award of economic, non-economic, and punitive damages in unspecified amounts. On April 5, 2016, I granted Wickenkamp's motion for extension of time *nunc pro tunc* and deemed her third amended complaint timely filed as of March 7, 2016.

It appears to be Wickenkamp's position that this court may properly exercise diversity jurisdiction over her claims pursuant to 28 U.S.C. § 1332(a) based on the complete diversity of the parties, notwithstanding the fact that the amount in controversy in connection with her claims cannot be ascertained from the allegations of her pleading. *See* Third Amended Complaint, ¶ 2, *passim*.

Now before the court are (i) Zachary's and HLG's motion (#59) to dismiss Wickenkamp's claims in their entirety on subject-matter jurisdictional grounds, in the alternative to strike Wickenkamp's claims in their entirety pursuant to Or. Rev. Stat. §§ 31.150 - 31.155, Oregon's anti-SLAPP ("Strategic Lawsuit Against Public Participation") statutory scheme, and in the

further alternative to dismiss Wickenkamp's claim of invasion of privacy by intrusion upon seclusion to the extent alleged against them for failure to state a claim upon which relief may be granted, (ii) Angeli's and Sali's motion (#60) to dismiss Wickenkamp's claim of invasion of privacy by false light on personal jurisdictional grounds to the extent alleged against them, in the alternative to strike that claim pursuant to Oregon's anti-SLAPP statutory scheme, and in the further alternative to dismiss that claim for failure to state a claim upon which relief may be granted, and (iii) Wickenkamp's motion (#97) and amended motion (#101) for judicial notice. I have considered the motions and all of the pleadings and papers on file.

For the reasons set forth below, (i) Zachary's and HLG's motion (#59) to dismiss and/or to strike should be granted as to both of Wickenkamp's claims in their entirety for lack of subject-matter jurisdiction and for failure to comply with Judge Hernandez' order (#45) dated January 31, 2016, and should otherwise be denied as moot, (ii) all other pending motions should likewise be denied as moot, and (iii) a final judgment should be prepared.

## LEGAL STANDARDS

### I. Motion to Dismiss for Lack of Subject-Matter Jurisdiction

The federal courts are courts of limited jurisdiction. *See, e.g., Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005), *citing Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). As such, the courts presume that causes of action "lie[] outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377; *see also, e.g., Vacek v. United States Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006).

A motion under Federal Civil Procedure Rule 12(b)(1) to dismiss for lack of subject-

matter jurisdiction may be either "facial" or "factual." *See Safe Air v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004), *citing White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack on subject-matter jurisdiction, the moving party asserts that a plaintiff's allegations are insufficient on their face to invoke federal jurisdiction, whereas in a factual attack, the moving party disputes the factual allegations that, if true, would give rise to subject-matter jurisdiction. Where a defendant raises a facial challenge to subject-matter jurisdiction, the factual allegations of the complaint are presumed to be true, and the motion may be granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003). By contrast, where a defendant raises a factual challenge to federal jurisdiction, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment," *Safe Air v. Meyer*, 373 F.3d at 1039, *citing Savage*, 343 F.3d at 1039 n. 2, and "need not presume the truthfulness of the plaintiff's allegations," *id.*, *citing White*, 227 F.3d at 1242.

"Defective allegations of jurisdiction may be amended, upon terms, in trial or appellate courts." 28 U.S.C. § 1653. It is improper to dismiss an action based on a defective allegation of jurisdiction without leave to amend "unless it is clear, upon de novo review, that the complaint could not be saved by amendment." *Snell v. Cleveland, Inc.*, 316 F.3d 822, 828 n.6 (9th Cir. 2002), *citing Lee v. City of Los Angeles*, 250 F.3d 668, 692 (9th Cir. 2001).

## II. Motion to Dismiss for Lack of Personal Jurisdiction

A motion to dismiss for lack of personal jurisdiction is governed by Federal Civil Procedure Rule 12(b)(2). *See* Fed. R. Civ. P. 12(b)(2). "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that

jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008), *citing Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). In evaluating the defendant's motion, "[t]he court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *citing Data Disc, Inc. v. Systems Technology Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). If the court decides the motion based on the pleadings and affidavits submitted by the parties without conducting an evidentiary hearing, "the plaintiff need make only a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Id., quoting Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). In the absence of such an evidentiary hearing, the court accepts uncontroverted allegations contained within the plaintiff's complaint as true, and resolves conflicts between statements contained within the parties' affidavits in the plaintiff's favor. *See id.*

## III. Special Motion to Strike

"Or. Rev. Stat. §§ 31.150 - 31.155 comprise Oregon's anti-SLAPP ("Strategic Lawsuit Against Public Participation") statute[]. Anti-SLAPP statutes are designed to allow the early dismissal of meritless lawsuits aimed at chilling expression through costly, time-consuming litigation." *In re Gardner*, 563 F.3d 981, 986 (9th Cir. 2009), *citing Verizon Delaware, Inc. v. Covad Comms. Co.*, 377 F.3d 1081, 1090 (9th Cir. 2004).

> Section 31.150 allows defendants to bring a special motion to strike a claim which shall be treated as a motion to dismiss under Or. R. Civ. P. 21 A and requires the court to enter a "judgment of dismissal without prejudice" if the motion is granted. **The court's consideration of a special motion to strike is a two-step process. First, the defendant has the initial burden to show that the challenged statement is within one of the categories of civil actions described in Or. Rev. Stat. § 31.150(2). If the defendant meets the initial burden, "the burden shifts to the plaintiff in the action to establish that there is a probability that**

> **the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case.** If the plaintiff meets this burden, the court shall deny the motion." Or. Rev. Stat. § 31.150(3).

*In re Gardner*, 563 F.3d at 986 (emphasis supplied; footnote omitted).

In evaluating special motions to strike under Section 31.150, the Oregon courts consider "the facts underlying plaintiffs' claims in the light most favorable to plaintiffs," *Neumann v. Liles*, 261 Or. App. 567, 570 n. 2 (2014), and do not weigh the evidence or make any determination of the likelihood that plaintiffs will ultimately prevail, *citing Young v. Davis*, 259 Or. App. 497, 508 (2013). Each of the two steps of the process – the defendant's burden to show that the challenged statement is within the scope of the anti-SLAPP statute and the plaintiff's burden to establish "a probability" that the claims will prevail "by presenting substantial evidence to support a *prima facie* case" – presents a question of law. *Id.* at 572, *citing Young*, 259 Or. App. at 507-510. Section 31.150 is intended to create and does create a "low bar" for plaintiffs to overcome, and is intended only "to weed out meritless claims meant to harass or intimidate—not to require that a plaintiff prove its case before being allowed to proceed further." *Young*, 259 Or. App. at 508, *citing Staten v. Steel*, 222 Or. App. 17, 32 (2008) ("The purpose of the special motion to strike procedure. . . is to expeditiously terminate *unfounded* claims that threaten constitutional free speech rights, not to deprive litigants of the benefit of a jury determination that a claim is *meritorious*" (emphasis original)). A plaintiff meets its burden under Section 31.150 by submitting evidence that, if credited, "would permit a reasonable factfinder" to rule in the plaintiff's favor. *Neumann*, 261 Or. App. at 575; *see also Young*, 259 Or. App. at 508 ("the presentation of substantial evidence to support a *prima facie* case is, *in and of itself*, sufficient to establish a probability that the plaintiff will prevail; whether or not it is 'likely' that the plaintiff

will prevail is irrelevant in determining whether it has met the burden of proof set forth by ORS 31.150(3)" (emphasis original)). As necessarily follows from the foregoing, the fact that the defendant may present substantial evidence to the contrary is likewise irrelevant to determining whether the plaintiff has met his burden. *See Young*, 259 Or. App. at 510.

The Oregon courts "look to California case law [in construing Section 31.150 *et seq.*] because Oregon's anti-SLAPP statute was 'modeled on California statutes' and '[i]t was intended that California case law would inform Oregon courts regarding the application of ORS 31.150 to ORS 31.155.'" *Neumann*, 2014 Ore. App. LEXIS 296, *9 n. 3, *quoting Page v. Parsons*, 249 Or. App. 445, 461 (2012).

**IV. Motion to Dismiss for Failure to State a Claim**

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" specifically, it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the speculative level, "[t]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.*, *quoting* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004); *see also* Fed. R. Civ. P. 8(a). Instead, the plaintiff must plead affirmative factual content, as opposed to any merely conclusory recitation that the elements of a claim have been satisfied, that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from

that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009), *citing Iqbal*, 129 S. Ct. at 1949.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). In considering a motion to dismiss, this court accepts all of the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Kahle v. Gonzales*, 474 F.3d 665, 667 (9th Cir. 2007). Moreover, the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994), *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The court need not, however, accept legal conclusions "cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## JUDICIAL NOTICE

Wickenkamp requests that this court take judicial notice of the dockets and all of the filings in *Hampton* et al. *v. Steen* et al. ("*Hampton I*"), Case No. 2:12-CV-470-AA, filed in the United States District Court for the District of Oregon, and in *Hampton* et al. *v. Steen* et al. ("*Hampton II*"), Case No. 14-36025, filed in the Ninth Circuit Court of Appeals on appeal from *Hampton I.* Wickenkamp makes her request through a motion (#97) filed May 16, 2016, and through an amended motion (#101) filed May 19, 2016. Because the amended motion appears intended to supercede the originally filed motion, the motion (#97) filed May 16, 2016, should be denied as moot. Because the docket and filings in the two proceedings contain fit matters for judicial notice, Wickenkamp's request as articulated by and through her amended motion (#101)

filed May 19, 2016, should be granted. *See* Fed. R. Evid. 201.

In material part, the noticed filings establish as follows.

On March 15, 2012, Bruce, Vanese, and the trustee of the Bruce & Venese Hampton Charitable Trust I and the Bruce & Venese Hampton Charitable Trust II (the "Hampton trustee" and, collectively with Bruce and Vanese, the "*Hampton I* plaintiffs") brought an action in this court against Wallowa County, the Wallowa County Sheriffs Office, and the Sheriff of Wallowa County in both his individual and his official capacities (collectively, the *Hampton I* defendants"). The *Hampton I* plaintiffs were represented in connection with the *Hampton I* litigation by Angeli, Sali, Souede, Knapp, and Zachary. By and through their complaint as filed on March 15, 2012, Bruce, Vanese, and the Hampton trustee alleged, *inter alia*, as follows:

> 7. In 2007, Lloyd Trackwell, [the Sheriff of Wallowa County], [the Wallowa County Sheriffs Office], Judith Trackwell, [Mary] Wickenkamp, and Lloyd Trackwell, Sr., associated together for the purpose ofdiscrediting, defaming, coercing, and injuring Marilyn Suarez, AC3, Inc., . . . [the *Hampton I*] plaintiffs and others. The above-referenced persons also associated together to engage in activities that caused expense and economic loss to Marilyn Suarez, AC3, Inc., [the *Hampton I*] plaintiffs, and others in order to cause [the *Hampton I*] defendants' victims to pay money they do not owe, or to cause [the *Hampton I*] defendants' victims to abandon attempts to collect money that [the *Hampton I*] defendants, or one of them, owed to their victims.
>
> * * *
>
> 11. From time to time from March 6, 2008 to the present, Lloyd Trackwell, Steen, [the Wallowa County Sheriffs Office], and/or Judith Trackwell, with assistance from Wickenkamp, filed false reports with [the Oregon Department of Consumer and Business Services], the Oregon State Police, the Oregon Department of Justice, the Internal Revenue Service, the Federal Bureau of Investigation, and the Financial Crimes Enforcement Network of the United States Department of the Treasury, alleging, among other things, that [the *Hampton I*] plaintiffs had conspired with Marilyn Suarez, Wallowa Title Company, and others to commit the crimes of money laundering, theft, tax evasion, and fraud.

12. In August 2007, Lloyd Trackwell sought and procured an agreement to serve as an agent for [ABM], a Missouri banking corporation, in seeking collection of a debt allegedly owed by [the *Hampton I*] plaintiffs to ABM. ABM agreed to pay Lloyd Trackwell 45% of any monies Lloyd Trackwell collected from [Bruce, Vanese, and the Hampton trustee] on the alleged debt. Lloyd Trackwell, Steen, [the Wallowa County Sheriff's Office], and Judith Trackwell, along with Wickenkamp, conspired to collect the debt through unlawful debt collection practices, defamation, coercion and extortion. The referenced persons have pursued that conspiracy and plan against [the *Hampton I*] plaintiffs from 2007 to the present. [The *Hampton I*] plaintiffs were not validly indebted to ABM at any material time.

* * *

16. From 2007 to the present, Judith Trackwell and Wickenkamp have conspired with and assisted Lloyd Trackwell in his efforts to collect the alleged debt from [the *Hampton I*] plaintiffs as alleged above, and have further conspired with and assisted Lloyd Trackwell and Steen in their illegal campaign to injure [the *Hampton I*] plaintiffs as alleged below. . . .

* * *

36. On December 29, 2008, Judith Trackwell signed and filed a falsely sworn affidavit in Hood River County Circuit Court in which she falsely swore that she had a pending deal to sell the Imnaha Ranch to a nonprofit corporation called Western Horizons Conservation Society, that Mary Dorrenbach aka Wickenkamp was the principal of Western Horizon with whom she was dealing, that an escrow had been opened with First American Title Company, and that attorney Jeffrey Fraizier had interfered with the deal and caused its termination. Judith Trackwell knew that Western Horizons was a sham corporation created by [the *Hampton I*] defendants for fraudulent purposes, that it had no resources to purchase anything, and that there was no real "deal" with which to interfere.

* * *

38. On December 29,2008, Wickenkamp (aka Mary Dorrenbach) signed and filed a falsely sworn affidavit that she was "Mary Dorrenbach", that she had made an offer of $9,000,000 to purchase the Imnaha Ranch, and that calls from attorney Jeffrey Frazier to her had caused her to terminate the deal. (Wickenkamp knew that Western Horizons Conservation Society was a sham corporation created by [the *Hamption I*] defendants for fraudulent purposes and that there was no real "deal" with which to

interfere.)

39. Wickenkamp's actions set out above violated ORS 162.075 (false swearing) and ORS 162.065 (perjury).

* * *

42. On October18, 2008, Lloyd Trackwell and Judith Trackwell, with the assistance of Lloyd Trackwell, Sr., and Wickenkamp, submitted a false application to [the Oregon Watershed Enhancement Board] in which they falsely asserted that Western Horizons Conservation Society, a sham nonprofit corporation (created by [the *Hampton I*] defendants for fraudulent purposes) was willing to purchase the Imnaha Ranch for $9,000,000. (They knew when making the application to [the Oregon Watershed Enhancement Board] that Western Horizons Conservation Society was a sham corporation created by them for fraudulent purposes and that the "deal" to purchase the Imnaha Ranch did not exist.)

43. These actions as set out above violated ORS 162.085 (unsworn falsification).

*Hampton I*, Complaint, ¶¶ 7, 11-12, 16, 36, 38-39, 42-43. Neither Lloyd Trackwell nor Wickenkamp was named as a defendant in the original *Hampton I* complaint. The *Hampton I* plaintiffs amended their complaint effective May 29, 2012, adding Lloyd Trackwell as an additional defendant. The *Hampton I* amended complaint contained substantially the same allegations of Wickenkamp's improper conduct as were contained in the original *Hampton I* complaint. *See Hampton I*, Amended Complaint. The *Hampton I* plaintiffs amended their complaint a second time on August 8, 2013, adding an additional defendant and making substantially the same allegations of Wickenkamp's improper conduct as were contained in the original *Hampton I* complaint. *See Hampton I*, Second Amended Complaint. The *Hampton I* plaintiffs amended their complaint a third time on April 15, 2014, making substantially the same allegations of Wickenkamp's improper conduct as were contained in the original *Hampton I* complaint. *See Hampton I*, Third Amended Complaint. Judge Aiken dismissed the *Hampton I*

plaintiffs' claims effective October 28, 2014. Judge Aiken's ruling is currently under appeal. *See Hampton II.*

## FACTUAL BACKGROUND

### I. Wickenkamp's Allegations in Support of Her Claims[1]

Between 2009 and 2014, the Hamptons intercepted and recorded Lloyd Trackwell's telephone conversations, including his conversations with Wickenkamp. The Hamptons disseminated information gleaned from those recorded conversations to Zachary, Rahn, Knapp, HK, and HLG "for use in court matters, public dissemination and dissemination to third parties." Third Amended Complaint, ¶ 13. It is Wickenkamp's position that the interception and recording of her conversations with Lloyd Trackwell constituted tortious invasion of her privacy.

By and through the complaint and amended complaints filed on March 15 and May 29, 2012, August 8, 2013, and April 15, 2014, in *Hampton I*, and while represented for purposes of litigating *Hampton I* by Zachary, Knapp, Angeli, Sali, Souede, HK, HLG, and ALG, Bruce and Vanese alleged that Wickenkamp had conspired with Lloyd Trackwell and others to engage in illegal and improper conduct, with full awareness that such allegations were false. It is Wickenkamp's position that those allegations tortiously portrayed her to the public in a false and damaging light.

### II. Material Procedural History

As noted above, Wickenkamp filed this action against the Hostetters, HLG, HK, Bruce,

---

[1] Except where otherwise indicated, the following recitation constitutes my construal of the allegations of plaintiff Wickenkamp's third amended complaint, of any matters incorporated by reference therein, and of any matters properly subject to judicial notice in the light most favorable to Wickenkamp.

Vanese, Sali, and Angeli on February 19, 2015, stating four claims against those defendants collectively. On February 23, 2015, summons issued as to defendants Bruce, Vanese, HLG, HK, and Zachary only.

Also as noted above, Wickenkamp amended her complaint effective April 10, 2015, adding as additional defendants Knapp, Souede, the Suarezes, and ABM, and increasing to fifteen the number of claims alleged.

Return of service in connection with the summons that issued on February 23, 2015, was filed executed as to defendants Zachary, HK, and HLG on April 30, 2015. On May 4, 2015, summons issued as to defendants Angeli, Sali, Souede, and Efrain.

Also on May 4, 2015 (as noted above), Wickenkamp amended her complaint a second time, alleging a total of seventeen claims against the then-named defendants.

It appears that in September 2015, Wickenkamp attempted to effect service of process on defendants Angeli and Sali (and possibly additional defendants) by sending copies of the summons, complaint, and first amended complaint (but not the second amended complaint, Wickenkamp's then-operative pleading) to their offices via certified mail.

On December 3, 2015 (as noted above), I recommended that all of Wickenkamp's claims be dismissed, certain of them with prejudice and certain of them without, and further recommended both that Wickenkamp be directed to amend her pleading as to any of her claims as to which she believed the identified deficiencies were subject to cure by amendment to restate those claims in a manner compliant with Rule 8 and all other applicable pleading requirements within thirty days and to effect service on any defendant named in any such restated claim who had not yet been served with process herein within thirty days after filing such third amended

complaint and that Wickenkamp be advised (i) that should she fail to comply with Rule 8 or other applicable pleading requirements in drafting her third amended complaint, any claims alleged in a noncompliant manner would be subject to dismissal with prejudice, and (ii) that should she fail to serve any named defendant with process within the prescribed time period, her claims would be subject to dismissal with prejudice to the extent alleged against any unserved defendant. On January 31, 2016 (also as noted above), Judge Hernandez adopted my recommendations without modification. Thus, Judge Hernandez' order (#45) of January 31, 2016, constituted this court's order that Wickenkamp serve all defendants not previously served with process by not later than thirty days after the date she filed her contemplated third amended complaint, and further constituted express notice to Wickenkamp that her claims would be subject to summary dismissal to the extent alleged against any defendant not served within or before that time.

On March 2, 2016, Wickenkamp moved for extension of time within which to file her contemplated third amended complaint from March 1 to March 7, 2016; on March 7, 2016 (as noted above), before the court ruled on her motion for extension of time, she filed her third amended complaint, reducing the number of claims alleged to two, abandoning her claims to the extent alleged against the Suarezes and ABM, and adding Scott and ALG as new defendants. On April 5, 2016, these chambers granted Wickenkamp's motion for extension of time *nunc pro tunc* and deemed her third amended complaint timely filed as of March 7, 2016.

As noted above, Wickenkamp's third amended complaint contains no indication of the amount in controversy. Moreover, it is not possible from Wickenkamp's allegations in support of her claims to ascertain whether the amount in controversy is likely to be above or below the

$75,000 jurisdictional minimum for the exercise of diversity jurisdiction.

Also on April 5, 2016, summons issued as to defendants Angeli, Souede, ALG, the Hamptons, the Hostetters, HK, and HLG. In the absence of any extension thereof, the thirty-day period granted to Wickenkamp for effecting service of process on previously unserved defendants closed on April 6, 2016. Wickenkamp attempted to serve Angeli and Knapp with process on April 19, 2016, attempted to serve Sali with process on April 22, 2016, and attempted to serve Rahn with process on April 26, 2016; each of those efforts met with apparent success. Wickenkamp additionally attempted to serve Scott with process on April 20, 2016, and attempted to serve Bruce and Vanese with process on May 3, 2016, patently unsuccessfully.

On April 8, 2016, after the time granted to Wickenkamp to effect service of process on all unserved defendants had passed, Zachary and HLG filed their motion (#59) to dismiss Wickenkamp's claims. Angeli and Sali filed their motion (#60) to dismiss on April 11, 2016. On April 19, 2016, Wickenkamp moved for extension of her deadline for responding to the two pending dispositive motions, and on April 20, 2016, these chambers granted Wickenkamp's motions for extension of time, directing her to file her responses by May 9, 2016. On May 9, 2016, rather than file responsive briefing, Wickenkamp moved the court for further extension of the time for filing her responses to the pending dismissal motions to May 11, 2016 (inaccurately characterizing her motion as unopposed). On May 10, 2016, the court granted Wickenkamp's motion for further extension of the deadline, directing Wickenkamp to file her responsive briefing by not later than May 11, 2016, and expressly advising the parties that "[n]o further extensions to the dismissal motions briefing schedule w[ould] be allowed." On May 11, 2016, rather than file responsive briefing, Wickenkamp moved the court for yet further extension of the

time for filing her response to the pending dismissal motions to May 16, 2016. Notwithstanding the court's advice to the parties that the briefing schedule would not be further extended, the court granted the motion in part and extended the responsive briefing deadline to May 13, 2016, emphasizing that "[p]laintiff's responses to all dismissal motions must be filed no later than 5/13/2016" (emphasis original) and expressly reiterating that "[t]he court w[ould] not entertain any further extension requests or late submissions." Wickenkamp did not file responsive briefing by May 13, 2016, as ordered by the court, but rather delayed until May 19 and 22, 2016, before filing such briefing, moving (#99, 112) that her responsive briefing be deemed timely filed *nunc pro tunc*. On May 25, 2016, I denied Wickenkamp's motion to deem her responsive briefing timely filed. Notwithstanding my order denying Wickenkamp's motions that her responsive briefing be deemed timely filed, on May 27, 2016, the moving defendants filed reply memoranda in further support of their respective pending dispositive motions.

On July 14, 2016, following *sua sponte* reconsideration of my order of May 25, 2016, order denying Wickenkamp's motion that her responsive briefing be deemed timely filed, I reversed that order and construed Wickenkamp's responsive briefing as timely. In consequence, the court may properly, and should, consider the arguments set forth in Wickenkamp's opposition memorandum (#105) of May 19, 2016, and opposition memorandum (#113) of May 22, 2016, the evidence offered by Wickenkamp in connection with those memoranda, and the moving defendants' reply memoranda (#125, 126) of May 27, 2016.

## ANALYSIS

As noted above, both sets of moving defendants – that is, both Zachary and HLG (collectively, the "moving HLG defendants") and Angeli and Sali (collectively, the "moving

ALG defendants") – argue that Wickenkamp's claims should be dismissed pursuant to Federal Civil Procedure Rule 12(b)(1) on jurisdictional grounds, in the alternative that her claims should be specially stricken pursuant to Or. Rev. Stat. § 31.150, and in the further alternative that her claims should be dismissed in their entirety or in part on their merits pursuant to Federal Civil Procedure Rule 12(b)(6). I address first the jurisdictional arguments, then the special motions to strike, and finally the merits arguments.

## I. Jurisdiction

### A. Federal Subject-Matter Jurisdiction

As noted above, the federal courts are courts of limited jurisdiction, and district courts are accordingly required to presume that asserted causes of action fall outside the scope of federal subject-matter jurisdiction unless and until the party asserting federal jurisdiction satisfies the burden to establish that the exercise of federal jurisdiction would be proper. *See Kokkonen*, 511 U.S. at 377. Here, Wickenkamp asserts only causes of action arising under Oregon common law, and there is no colorable argument that this court could appropriately assert federal-question jurisdiction over her asserted claims pursuant to 28 U.S.C. § 1331. Moreover, at this pretrial stage of these proceedings it would be patently inappropriate to assert supplemental jurisdiction over Wickenkamp's current claims following her abandonment of her previously pled federal claims. *See* 28 U.S.C. § 1367(c)(3) ("[t]he district courts may decline to exercise supplemental jurisdiction over a [state-law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction"); *Carnegie- Mellon Univ. v Cohill*, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of the factors to be considered under the pendent jurisdiction doctrine--judicial economy,

convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims"). Under the applicable circumstances, therefore, this court may only properly exercise subject-matter jurisdiction over Wickenkamp's claims to the extent she has met her burden to establish that the requirements for the exercise of diversity jurisdiction have been satisfied.

The requirements for the exercise of diversity jurisdiction are codified at 28 U.S.C. § 1332(a), which provides in relevant part as follows:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—
>
> (1) citizens of different States;
>
> * * * .

28 U.S.C. § 1332(a). "Diversity is generally determined from the face of the complaint." *Gould v. Mut. Life Ins. Co. of N.Y.*, 790 F.2d 769, 773 (9th Cir.). It is the burden of the party asserting diversity jurisdiction to establish that its prerequisites have been met. The moving HLG defendants expressly challenge the adequacy of Wickenkamp's allegations to establish the prerequisites of diversity jurisdiction.

Here, as noted above, the amount in controversy cannot be determined from the face of Wickenkamp's complaint, nor is there any fair inference from any of Wickenkamp's allegations that she could have been damaged by any or all of the complained-of conduct in an amount exceeding $75,000. As the HLG defendants' motion *qua* motion to dismiss for lack of subject-matter jurisdiction raises a strictly facial jurisdictional challenge, the court may not look beyond Wickenkamp's complaint for purposes of determining the merits of the motion. In light of

Wickenkamp's undisputed failure to allege one of the essential prerequisites of diversity jurisdiction, it follows that this court may not properly exercise diversity jurisdiction over Wickenkamp's claims on the basis of her current operative pleading.

Notwithstanding the foregoing, I note that, as a general rule, to justify dismissal for lack of diversity jurisdiction "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). At this stage and on the current record, I do not find "to a legal certainty" that Wickenkamp's potential damages could not exceed the jurisdictional minimum. Wickenkamp offers her declaration testimony that "it is [her] intention to seek at least $3,000,000 in damages for the harm caused by" defendants' complained-of conduct, Declaration (#104) of Mary Wickenkamp ("Wickenkamp Decl."), ¶ 13, suggesting that the deficiency in her jurisdictional allegations could be cured by amendment. Without more, Wickenkamp's failure to allege an amount in controversy in excess of the jurisdictional threshold would therefore not ordinarily be sufficient to justify dismissal of her claims without first giving her a fourth opportunity to amend her pleading. *See St. Paul Mercury*, 303 U.S. at 289.

As noted above, however, on January 31, 2016, Judge Hernandez ordered that Wickenkamp amend her pleading in a manner compliant with "Rule 8 and all other applicable pleading requirements within thirty days" and expressly advised her that "should she fail to comply with Rule 8 or other applicable pleading requirements in drafting her third amended complaint, any claims alleged in a noncompliant manner w[ould] be subject to dismissal with prejudice." Order (#45) at 2, 2-3. Federal Civil Procedure Rule 8(a) provides as follows:

A pleading that states a claim for relief must contain:

> (1) **a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;**
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a) (emphasis supplied).[2] Wickenkamp's failure to plead an amount in controversy in excess of $75,000 thus constitutes not merely a barrier to the proper exercise of subject-matter jurisdiction but in addition a violation of Judge Hernandez' order of January 31, 2016. Wickenkamp's failure to comply with Judge Hernandez' order serves as an independent and sufficient ground for denying Wickenkamp an opportunity to further amend her pleading.

> In determining whether to dismiss a claim for . . . failure to comply with a court order, the Court must weigh the following factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits.

*Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002), *citing Ferdik v. Bonzelet*, 963 F.2d

---

[2] Wickenkamp was on express notice of the fact that her claims required "new jurisdictional support" at the time she filed her third amended complaint. As I noted in my Findings and Recommendation (#41) dated December 3, 2015, by and through her second amended complaint, Wickenkamp asserted that this court could properly exercise diversity jurisdiction over her claims, but that assertion of jurisdiction failed in part due to Wickenkamp's failure to "assert a right to any specified amount of monetary damages" in support. Findings and Recommendation (#41) at 5, n. 4. Although I found that the court could properly exercise federal-question jurisdiction over the federal claims and supplemental jurisdiction over the state-law claims alleged by and through Wickenkamp's second amended complaint, that basis for the exercise of jurisdiction was patently lost when Wickenkamp filed a third amended complaint that stated no federal claims. Wickenkamp was thus on express notice that an assertion of diversity jurisdiction over the claims set forth in her third amended complaint would be deficient if unsupported by an allegation of an amount in controversy.

1258, 1260-1261 (9th Cir. 1992).[3] I discuss the application of each of those five factors in turn.

"The public's interest in expeditious resolution of litigation always favors dismissal." *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1990). This action was filed over a year ago, and in that time has been marked by numerous unexplained delays in Wickenkamp's efforts to prosecute her claims, and by total failure to progress past the pleading stage of litigation. The first factor therefore weighs clearly in favor of dismissal. *See Pagtalunan*, 291 F.3d at 642.

The second factor, concerning the court's need to manage its docket, likewise clearly favors dismissal. "It is incumbent upon the Court to manage its docket without being subject to routine noncompliance of litigants such as [Wickenkamp]," whose methods of litigation in these proceedings – setting entirely aside her methods employed both in other recent litigation matters before this court and before courts of other federal jurisdictions – including routine unexplained delays and failures to comply with court-ordered deadlines, have caused this action to consume a significantly disproportionate share of this court's judicial resources. *Id., citing Ferdik*, 963 F.2d at 1261.

As to the third enumerated factor, "[t]o prove prejudice, a defendant must establish that plaintiff's actions impaired defendant's ability to proceed to trial or threatened to interfere with the rightful decision of the case." *Id., citing Malone v. United States Postal Serv.*, 833 F.2d 128,

---

[3] In addition, "before dismissing a *pro se* complaint the district court must provide the litigant with notice of the deficiencies in h[er] complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Ferdik*, 963 F.2d at 1261. Here, as repeatedly discussed in the course of this Findings and Recommendation, the court provided Wickenkamp with express notice of the need to correct the deficiencies in her jurisdictional allegations prior to the date she filed her third amended complaint.

131 (9th Cir. 1987). However, "[w]hether prejudice is sufficient to support an order of dismissal is in part judged with reference to the strength of the plaintiff's excuse for the default." *Malone*, 833 F.2d at 131, *citing Nealey v. Transportacion Maritima Mexicana, S.A.*, 662 F.2d 1275, 1280 (9th Cir. 1980); *see also Yourish*, 191 F.3d at 991-992 (where a plaintiff's violation of a court order is without reasonable justification, even extremely minor prejudice to a defendant stemming from delay of litigation can be sufficient to "strongly support dismissal"). As noted above, Wickenkamp was on express notice of the need for "new jurisdictional support" in connection with the claims asserted by and through her third amended complaint and on express notice of the need to allege an amount in controversy in excess of the jurisdictional threshold in order to support an assertion of diversity jurisdiction. Wickenkamp offers no grounds tending to excuse or explain her failures to support her assertion of jurisdiction with such an allegation and to comply with Judge Hernandez' order. In light of the entirely groundless nature of Wickenkamp's failure to comply with Judge Hernandez' order, the prejudice to defendants stemming from her failure to provide defendants with a short and plain statement of her claims and jurisdictional basis following repeated amendments of her pleading and from her many and various unreasonable delays in meeting court-ordered deadlines is sufficient to support the conclusion that the third factor likewise mitigates in favor of dismissal. *See Yourish*, 191 F.3d at 991-992; *Pagtalunan*, 291 F.3d at 642-643; *Malone*, 833 F.2d at 131.

As to the fourth factor, in determining whether less drastic measures than dismissal are available, the district courts are called upon to consider whether sanctions more lenient than dismissal would be adequate under the circumstances to correct the party's noncompliance, and ordinarily must both attempt the imposition of lesser sanctions and warn the plaintiff of the

possibility that further noncompliance will result in dismissal before implementing the ultimate sanction. *See Malone*, 833 F.2d at 132. Here, Wickenkamp's noncompliance with court orders has been routine over the course of these proceedings, and even repeated warnings have not proven adequate to prevent further similar noncompliance. *See, e.g.*, Docket No. 124 (detailing a limited subset of Wickenkamp's repeated and compounded failures to comply with court-ordered deadlines, including where she herself requested such deadlines); Docket Nos. 57, 90, 92 (each identifying Wickenkamp's repeated failure to comply with the requirements of Local Rule 10-2, setting forth the requirements for compliance with Local Rule 10-2 with particularity, and directing future compliance therewith). This court has also previously dismissed Wickenkamp's claims without prejudice for failure to comply with Rule 8(a), *see* Opinion and Order (#45), expressly noting that an assertion of diversity jurisdiction is deficient if not supported by an allegation of an amount in controversy in excess of $75,000, *see* Findings and Recommendation (#41), only to be presented with a noncompliant amended pleading repeating the same jurisdictional deficiency. Wickenkamp's historical litigation practices strongly suggest that no sanction short of dismissal is likely to prevent further noncompliance with court orders. In addition, as discussed above, Wickenkamp was on express notice both of the need for an allegation of an amount in controversy to support her assertion of diversity jurisdiction at the time she filed her third amended complaint and of the fact that failure to comply with the pleading requirements of Rule 8(a) would result in dismissal with prejudice. Under all of the foredescribed circumstances, the fourth factor supports imposition of the dismissal sanction.

As to the fifth enumerated factor, "[p]ublic policy favors disposition of cases on the merits." *Pagtalunan*, 291 F.3d at 643. The fifth factor always mitigates against dismissal. *See*

*id.*

Three of the five factors (the public interest in expeditious litigation, docket management, and risk of prejudice) strongly favor imposition of the dismissal sanction, one factor (the availability of less drastic measures) weighs less strongly in favor of dismissal, and only one factor (public policy in favor of merits-based disposition) weighs (strongly) against dismissal. Weighing the factors, it is appropriate here to deny Wickenkamp the opportunity to yet further amend her pleading, to grant the moving HLG defendants' motion to the extent premised on lack of subject-matter jurisdiction, and to dismiss her action in its entirety with prejudice for lack of subject-matter jurisdiction and for failure to comply with Judge Hernandez' order of January 31, 2016. Such disposition would not prejudice Wickenkamp's ability to proceed with her invasion of privacy claims in an appropriate state court.

**B. Personal Jurisdiction**

While I recommend dismissal for lack of subject-matter jurisdiction, I nevertheless consider, in the alternative, whether this court may properly exercise personal jurisdiction over any defendant other than Zachary, HK, or HLG (which defendants have not challenged the adequacy of the service returned executed as to them on April 30, 2015). This inquiry will dovetail with the court's analysis of the jurisdictional argument proffered by the moving ALG defendants, namely that this court may not properly exercise personal jurisdiction over Angeli and Sali due to inadequate service of process.

The personal jurisdictional inquiry at issue here begins with the proposition that:

> A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4. *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982). However, "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint."

> *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984). Nonetheless, without substantial compliance with Rule 4 "neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction." *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986), *cert. denied*, 484 U.S. 870, 108 S. Ct. 198, 98 L. Ed. 2d 149 (1987).

*Direct Mail Specialists, Inc. v. Eclát Computerized Technologies, Inc.*, 840 F.2d 685, 688 (9th Cir. 1988).

As noted above, Wickenkamp initiated this action on February 19, 2015. Under Federal Civil Procedure Rule 4(m) as then codified, Wickenkamp was required to effect service of process on the defendants named in her complaint within 120 days. *See* Fed. R. Civ. P. 4, Committee Notes on Rules—2015 Amendment. By and through her complaint as originally filed, Wickenkamp named as defendants the Hostetters, HLG, HK, Bruce, Vanese, Sali, and Angeli. Wickenkamp amended her complaint April 10, 2015, adding as new defendants Knapp, Souede, the Suarezes, and ABM. Service was returned executed as to Zachary, HK, and HLG (only) on April 30, 2016, the time for effecting service of process on Rahn, Bruce, Vanese, Sali, and Angeli closed on June 19, 2015, and the time for effecting service of process on Knapp, Souede, and the Suarezes closed on August 8, 2015. There is no indication anywhere in the record that Wickenkamp made any attempt to effect service of process on any of those defendants within the prescribed time period. However, it appears that Wickenkamp made an initial effort to serve Angeli, Sali, and perhaps other defendants in September 2015, after the 120-day period for doing so had closed; service of process was not returned executed in connection with those efforts.

On December 3, 2015, I issued a Findings and Recommendation by and through which (*inter alia*) I noted that only Zachary, HK, and HLG appeared at that time to have been served,

recommended that all of Wickenkamp's claims be dismissed, recommended that the court direct Wickenkamp to amend her pleading within 30 days, recommended that the court direct Wickenkamp to serve all previously unserved defendants within 30 days of filing her amended complaint, and recommended that Wickenkamp be advised that failure so to serve the then-unserved defendants would result in the dismissal of her claims with prejudice to the extent alleged against any such unserved defendants. Judge Hernandez adopted those recommendations without modification on January 31, 2016.

Wickenkamp filed her third amended complaint on March 7, 2016, six days following the several-times extended court-ordered deadline for doing so. Her third amended complaint named as defendants the Hamptons, the Hostetters, Knapp, HK, HLG, and the ALG defendants.

On April 5, 2016, I issued an order deeming Wickenkamp's third amended complaint timely filed. That same day, Wickenkamp requested that summons issue as to all defendants named in the third amended complaint. On April 6, 2016, the date thirty days following the date Wickenkamp filed her third amended complaint, Wickenkamp moved the court for extension of time to serve the unserved defendants. Also on April 6, 2016, I denied the motion on grounds of procedural defects, with leave to refile. Wickenkamp did not refile the motion.

On April 14, 2016, Wickenkamp requested that the Wallowa County Sheriff's Office effect service of process on all of the named defendants. Service was returned executed as to Angeli and Knapp on April 14, 2016, as to Sali on April 22, 2016, and as to Rahn on April 26, 2016. Service was returned unexecuted as to Scott on April 20, 2016, and as to Bruce and Vanese on May 3, 2016.

### 1. Personal Jurisdiction Over Defendants Souede and ALG

It appears clear that Wickenkamp has never made any effort to serve Souede or ALG with process in this action. It appears equally clear that any future effort to serve those defendants will necessarily be untimely, both by reference to the statutory time limit for effecting service of process and by reference to the court's order directing that service of process be effected by a time certain, however liberally that order may be construed. *See* Fed. R. Civ. P. 4(m). Moreover, Wickenkamp's failure to serve these defendants is a clear violation of Judge Hernandez' order of January 31, 2016, by and through which Wickenkamp was placed on express notice that failure to effect service on unserved defendants within the prescribed time would result in dismissal of her claims with prejudice to the extent alleged against unserved defendants. Because the court may not properly exercise personal jurisdiction over Souede or ALG, and because no grounds exist for affording Wickenkamp any further opportunity to effect service over those defendants, Wickenkamp's claims should be dismissed with prejudice to the extent alleged against Souede and ALG, and those defendants should be dismissed from this action.

### 2. Personal Jurisdiction Over Defendants Angeli and Sali

As noted above, Wickenkamp made efforts to serve Angeli and Sali with process in September 2015 and again in April 2016. I discuss the adequacy of both efforts in turn.

#### a. Service Efforts of September 2015

The moving ALG defendants offer evidence that Wickenkamp attempted to effect service on them in September 2015 by mailing copies of the summons, complaint, and first amended complaint (but not the second amended complaint, which was at that time Wickenkamp's operative complaint) via certified mail to their offices, and that her mailings were received and

signed for by persons not authorized to receive service of process for either Angeli or Sali. Return of service was never returned executed in connection with the service efforts of September 2015. It is the moving ALG defendants' argument that Wickenkamp's service efforts of September 2015 were inadequate to provide any basis for this court to exercise personal jurisdiction over them. Wickenkamp does not oppose that argument, with which I concur.

Assuming *arguendo* that Wickenkamp's service efforts could reasonably be deemed substantially compliant with the manner of service requirements of Federal Civil Procedure Rule 4(e), no provision of Rule 4 suggests that any amount of substantial compliance with the manner of service requirements of the rule can excuse a plaintiff's failure to comply strictly with the time limit for service imposed by Rule 4(m), which provides in relevant part that:

> If a defendant is not served within [the prescribed time limit, here 120 days] after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). As the September 2015 efforts were plainly outside the prescribed 120-day period, that period was not extended by order of the court, and no good cause has been offered to explain the untimeliness of Wickenkamp's efforts, this court may not exercise personal jurisdiction over either Angeli or Sali on the basis of those efforts.

**b. Service Efforts of April 2016**

Service was returned executed as to Angeli on April 19, 2016 (indicating that office service was employed), and as to Sali on April 22, 2016 (indicating that personal service was employed). The moving ALG defendants have not filed any challenge to the adequacy of those service efforts, which had not yet occurred at the time they filed their pending motion. The only

question properly before the court at this time as to those service efforts is whether they should be construed as timely.

The argument that the service efforts of April 2016 were untimely is colorable. This court directed Wickenkamp in certain terms to effect service of process on all unserved defendants within thirty days following the date she filed her third amended complaint, placing her on express notice that her failure to do so would result in dismissal of her claims with prejudice to the extent alleged against unserved defendants. While that order plainly re-opened the time within which Wickenkamp could timely effect service, Wickenkamp did not comply with its unambiguous directive, instead requesting that summons issue on the 29th day of the 30-day period following March 7, 2016, the date the third amended complaint was filed, and not attempting to serve any defendant until approximately two to three weeks after the 30-day period closed.

However, I note that the court did not expressly deem the third amended complaint timely filed until April 5, 2016. That same day, Wickenkamp requested that summons issue, and she sought to serve Angeli, Sali, Knapp, Rahn, and the Hamptons within thirty days thereafter. In light of the uncertainty that may reasonably be attributed to Wickenkamp prior to April 5, 2016, as to whether the court would accept her third amended complaint as timely filed, I recommend that the court construe the court-ordered 30-day period for service of process to have begun on April 5, 2016, rather than on March 7, 2016. Under that construction, the service efforts of April 2016 were timely. In consequence, the court should deem Angeli and Sali timely served with process, and the moving ALG defendants' motion should be denied to the extent premised on lack of personal jurisdiction.

### 3. Personal Jurisdiction Over Defendants Knapp and Rahn

For the same reasons discussed above in connection with Wickenkamp's April 2016 efforts to serve Angeli and Sali, the court should deem Knapp and Rahn timely served. It follows that the court may properly exercise personal jurisdiction over those defendants.

### 4. Personal Jurisdiction Over Defendants the Hamptons

For the same reasons discussed above in connection with Wickenkamp's April 2016 efforts to serve Angeli and Sali, the court should deem timely Wickenkamp's unsuccessful efforts of April and May 2016 to serve the Hamptons. However, because those efforts were patently unsuccessful, at this time the court may not properly exercise personal jurisdiction over any of the Hamptons. Nevertheless, because Wickenkamp made a timely good-faith effort to effect service on the Hamptons, and because service on the Hamptons is the subject of motions filed by Wickenkamp that have not yet come before the court, I recommend that the court defer the question whether Wickenkamp's claims are subject to dismissal to the extent alleged against the Hamptons for lack of personal jurisdiction until such time as those motions are fully briefed and properly before the court.

## II. Special Motions to Strike

While I recommend dismissal for lack of subject-matter jurisdiction, I nevertheless consider, in the alternative, the merits of the moving defendants' motions *qua* special motions to strike. The moving HLG defendants move pursuant to Oregon's anti-SLAPP statutory scheme to strike both of Wickenkamp's two claims, whereas the moving ALG defendants move to strike only Wickenkamp's false light claim. I discuss the merits of both motions, together.

Oregon's Anti-SLAPP statute specifically provides as follows:

(1) A defendant may make a special motion to strike against a claim in a civil action described in subsection (2) of this section. **The court shall grant the motion unless the plaintiff establishes in the manner provided by subsection (3) of this section that there is a probability that the plaintiff will prevail on the claim.** The special motion to strike shall be treated as a motion to dismiss under ORCP 21 A but shall not be subject to ORCP 21 F. Upon granting the special motion to strike, the court shall enter a judgment of dismissal without prejudice. If the court denies a special motion to strike, the court shall enter a limited judgment denying the motion.

(2) **A special motion to strike may be made under this section against any claim in a civil action that arises out of:**

(a) **Any** oral statement made, or **written statement or other document submitted, in a** legislative, executive or **judicial proceeding** or other proceeding authorized by law;

(b) Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive or judicial body or other proceeding authorized by law;

(c) Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or

(d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

(3) **A defendant making a special motion to strike under the provisions of this section has the initial burden of making a prima facie showing that the claim against which the motion is made arises out of a statement, document or conduct described in subsection (2) of this section. If the defendant meets this burden, the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case.** If the plaintiff meets this burden, the court shall deny the motion.

(4) **In making a determination under subsection (1) of this section, the**

> **court shall consider pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.**
>
> (5) If the court determines that the plaintiff has established a probability that the plaintiff will prevail on the claim:
>
> (a) The fact that the determination has been made and the substance of the determination may not be admitted in evidence at any later stage of the case; and
>
> (b) The determination does not affect the burden of proof or standard of proof that is applied in the proceeding.

Or. Rev. Stat. 31.150 (emphasis supplied).[4]

Notwithstanding the foregoing, to the extent that Oregon's anti-SLAPP statute provides for an automatic stay of discovery when a special motion to strike is filed, because that provision would conflict with the Supreme Court's interpretation of Federal Civil Procedure Rule 56(f) as requiring discovery to proceed "where the nonmoving party has not had the opportunity to discover information that is essential to its opposition," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986), such automatic stay of discovery is necessarily inapplicable in federal court where discovery would be necessary for the plaintiff adequately to litigate a special motion to strike. *See Metabolife Int'l v. Wornick*, 264 F.3d 832, 846-847 (9th Cir. 2001).

### A. The Moving Defendants' Burden at the First Step of the Two-Step Anti-SLAPP Process

Both sets of moving defendants move to strike Wickenkamp's false light claim, whereas only the moving HLG defendants move to strike Wickenkamp's intrusion upon seclusion claim.

---

[4] Oregon Civil Procedure Rule 21 A provides a procedural mechanism for motions to dismiss, *see* Or. R. Civ. P. 21 A, while Oregon Civil Procedure Rule 21 F (which is expressly not applicable to motions brought under Section 31.150, *see* Or. Rev. Stat. 31.150(1)) permits motions to dismiss to be consolidated with other motions, *see* Or. R. Civ. P. 21 F.

Accordingly, both sets of moving defendants bear the burden to establish that the false light claim falls within the scope of one of the provisions of Section 31.150(2), while it is only the moving HLG defendants who bear that burden as to the intrusion upon seclusion claim.

As to the false light claim, the moving defendants satisfy their burden by reference to the allegations of Wickenkamp's third amended complaint. Wickenkamp alleges that the false light claim arises directly and solely out of allegations filed with a court in connection with a judicial proceeding, namely *Hampton I*. As such, the false light claim is clearly and necessarily within the scope of Section 31.150(2)(a) as a "written statement or other document submitted[] in a . . . judicial proceeding." Or. Rev. Stat. § 31.150(2)(a). The court should therefore find that the burden shifts to Wickenkamp to establish a probability of her success on the merits as to the false light claim.

As to the intrusion upon seclusion claim, the moving HLG defendants argue that the claim comes within the anti-SLAPP statute on the basis of Wickenkamp's allegation that the Hamptons disseminated information gleaned from conversations they intercepted and recorded between Lloyd Trackwell and Wickenkamp to Zachary, Rahn, Knapp, HK, and HLG "for use in court matters. . . ." Third Amended Complaint, ¶ 13. Even assuming *arguendo* that the disseminated information was in fact used in a court matter – a fact not expressly alleged – I disagree with the moving HLG defendants that the claim "arises" out of such use. The complained-of conduct alleged to constitute an intrusion upon Wickenkamp's seclusion is the interception and recording of private conversations, and it is out of that conduct that the claim arises. As such, the moving HLG defendants have not met their burden at the first step of the two-step process in connection with the intrusion upon seclusion claim, and the court should

therefore find that the anti-SLAPP inquiry ends as to that claim without need for Wickenkamp to establish a probability of success on its merits.

**B. Wickenkamp's Burden at the Second Step of the Two-Step Anti-SLAPP Process**

As noted above, Wickenkamp should be deemed to bear the burden to establish a probability of success on the merits as to her false light claim, but not to bear any such burden under Section 31.150 as to her intrusion upon seclusion claim. The Oregon courts have articulated the elements of the tort of false light as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor has knowledge of or acted in reckless disregard as to the falsity of the publi[ci]zed matter and the false light in which the other would be placed.

*Dean v. Guard Pub. Co.*, 73 Or. App. 656, 659 (1985), *quoting* Restatement (Second) Torts § 652E. The moving defendants argue that Wickenkamp cannot meet her burden to establish a probability of success on the merits of her false light claim because that claim is clearly time-barred and because they enjoyed an absolute litigation privilege against being subjected to suit in connection with the statements underlying the claim. For the reasons that follow, I disagree with the moving defendants that the claim is time-barred, but agree that Wickenkamp cannot establish the liability of any of the moving defendants for false light due to the absolute litigation privilege, and for that reason cannot meet her burden at the second step of the two-step process as to the false light claim.

It is not well settled whether the limitations period applicable to a claim of false light

under Oregon common law is one year or two years. Or. Rev. Stat. 12.120 provides that "[a]n action for libel or slander shall be commenced within one year," Or. Rev. Stat. 12.120(2), whereas the "catch-all" limitations provision under Oregon law, 12.110(1), provides that "[a]n action for . . . any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years," Or. Rev. Stat. 12.110(1). The Oregon Court of Appeals has noted that the tort of false light finds its origins as an extension of defamation law, but also that false light is nevertheless distinct from defamation, such that there could be colorable arguments for either the one-year or the two-year limitations periods. *See Magenis v. Fisher Broadcasting, Inc.*, 103 Or. App. 555, 557-560 (1990). The *Magenis* court concluded, following review of the cases addressing the issue (including Oregon Supreme Court cases), "that, when a claim characterized as false light alleges facts that also constitute a claim for defamation, the claim must be filed within the period for bringing a defamation claim." *Id.* at 560. The *Magenis* court's discussion of the question makes clear that "where the alleged false light . . . is plainly defamatory," the underlying facts could give rise to a defamation claim. *See id.* Here, the alleged false light at issue (namely, that Wickenkamp conspired to commit various illegal acts) is plainly defamatory. As such, under the well-considered reasoning of the *Magenis* court the one-year statute of limitations should be applied. I recommend that the court find that the Oregon Supreme Court would so rule.

Nevertheless, I do not find that the false light claim is time-barred as a matter of law. First, Wickenkamp is entitled to relation back of her false light claim, filed March 7, 2016, to February 19, 2015, the date she initiated these proceedings. Although Wickenkamp did not allege the liability of any defendant for false light by and through her complaint as originally

filed, she expressly alleged both that *Hampton I* had been wrongfully initiated and that the *Hampton I* plaintiffs alleged in those proceedings that Wickenkamp "had engaged in unlawful activity when there existed no genuine factual basis for such [allegation]s." Complaint, ¶ 16(d). These constitute sufficient grounds to require relation back. *See* Fed. R. Civ. P. 15(c) ("An amendment to a pleading relates back to the date of the original pleading when. . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading").

Second, the false light claim arguably could not have accrued prior to October 28, 2014, when Judge Aiken dismissed the *Hampton I* claims. As will be discussed in greater detail below, to overcome the absolute litigation privilege, a tort plaintiff whose claims arise out of statements made in the course of prior litigation proceedings must establish, *inter alia*, that those prior proceedings terminated in the tort plaintiff's favor. *See Mantia v. Hanson*, 190 Or. App. 412, 429 (2003). That element cannot be established until the prior proceedings have in fact terminated. To conclude that the limitations period applicable to the tort plaintiff's claim could have begun to run prior to termination of the proceedings out of which the claim arose would create the very real risk that a valid claim could become time-barred before there was any opportunity to bring it. For that reason, I recommend that the court find the false light claim timely filed as having accrued on October 28, 2014, and as relating back to the filing of February 19, 2015, fewer than four months later.

As to the argument that the false light claim is barred by operation of the absolute litigation privilege, I agree with the moving defendants. "Oregon courts have long recognized, and enforced, an absolute privilege for statements in the course of or incident to judicial and

quasi-judicial proceedings. That privilege applies equally to parties to such proceedings and to their attorneys." *Mantia*, 190 Or. App. at 417 (citations omitted). The controlling principles of the absolute litigation privilege are as follows:

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

*Id.*, *quoting* Restatement (Second) Torts § 586.[5] The policy concerns underlying the privilege have been described as follows:

> The privilege stated in this Section is based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients. Therefore the privilege is absolute. It protects the attorney from liability in an action for defamation irrespective of his purpose in publishing the defamatory matter, his belief in its truth, or even his knowledge of its falsity. These matters are of importance only in determining the amenability of the attorney to the disciplinary power of the court of which he is an officer. The publication of defamatory matter by an attorney is protected not only when made in the institution of the proceedings or in the conduct of litigation before a judicial tribunal, but in conferences and other communications preliminary to the proceeding.

*Id.* at 418, *quoting* Restatement (Second) Torts § 586, cmt a. It is well established that the litigation privilege, absent any exception, applies to bar a false light claim arising out of statements made in preparation for or in the course of litigation. *See Lee v. Nash*, 65 Or. App. 538, 542 (1983).

The Oregon courts recognize an exception to the absolute litigation privilege where the litigant or attorney defendant's "conduct satisfies the elements of wrongful initiation." *Mantia*,

---

[5] The same privilege is applicable with equal force to the litigants represented by such attorneys. *See Mantia*, 190 Or App. at 418, n. 4.

190 Or. App. at 429. That is, where the statements at issue were submitted in connection with litigation that terminated adversely to the party submitting the statements, the submitting party's claims against party seeking to overcome the privilege were without objectively reasonable basis when they were filed, and the submitting party's motivation for bringing those claims was other than to secure their adjudication, the privilege will not bar a claim against the submitting party. *See id.*

It appears to be an open question of Oregon law whether the litigation privilege may be asserted against a person not a party to the prior litigation in the course of which the potentially actionable statements were submitted. However, there appears to be no good policy ground for limiting the applicability of the litigation privilege to claims brought by named parties to the original litigation; so to limit the privilege would in many instances defeat its purpose in whole or in part. I therefore recommend that the court find the privilege applicable (absent any exception) to Wickenkamp's false light claim.

The court must therefore determine whether Wickenkamp has met her burden to establish a probability that she might overcome the absolute litigation privilege and, if so, whether she has established a probability that a finder of fact could find any of the moving defendants liable on the merits of the claim. It is undisputed that *Hampton I* terminated adversely to the *Hampton I* plaintiffs, satisfying the first element of the wrongful-initiation exception to the litigation privilege. As to whether the *Hampton I* plaintiffs or their counsel both lacked any objectively reasonable basis for bringing the *Hampton I* claims and were subjectively motivated to file their claims for reasons other than to secure their adjudication, Wickenkamp proffers in support of her position that the *Hampton I* claims were both objectively baseless and motivated by malice

approximately ninety minutes of audio-recorded conversation between Rahn and journalist Edward Snook in June and/or July 2012, and her own testimony that at some unspecified point in the approximately ninety minutes of recorded conversation, Rahn admitted that the purpose of the *Hampton I* lawsuit "was to get Lloyd Trackwell to 'lay off'" unspecified conduct apparently objectionable to the Hamptons, Wickenkamp Decl., ¶ 18(2).

I have listened to the audio-recordings in their entirety. Over the course of the recordings, Rahn repeatedly and consistently denies that the Hamptons had any improper motivation for bringing their action against Lloyd Trackwell. On two occasions over the course of the recordings, Rahn alludes to settlement discussions with Lloyd Trackwell in which the Hamptons offered to "walk away" and Lloyd Trackwell refused the offer in insulting and offensive terms. Neither of the two references to settlement discussions has any tendency to support the conclusion that the Hamptons or their counsel believed their claims against Lloyd Trackwell to be baseless or that the claims were motivated by malice against Lloyd Trackwell rather than by a desire to achieve their adjudication: it is routine to conduct settlement negotiations in connection with even highly meritorious claims, and the audio-recordings contain no indication of the nature of the concession(s) requested by the Hamptons in exchange for voluntary withdrawal of their claims that sparked Lloyd Trackwell's refusal of their offer. Nothing else in the audio recordings has any tendency whatsoever to suggest that Rahn believed the *Hampton I* claims were without objective or subjective merit.[6] Wickenkamp's proffered evidence is therefore inadequate to

---

[6] By contrast, on at least two occasions in the course of the recordings, Snook advises Rahn that he has written a "damning" article about Rahn and the Hamptons and threatens to publish it unless Rahn causes the Hamptons to "unwind all their corruption," in which case he would "bury" it. In addition, Snook advises Rahn that "people" frequently "hire" Snook when they have been "falsely accused," impliedly for the purpose of writing similarly "damning"

establish that she has a probability of successfully overcoming the absolute litigation privilege.

In the alternative to meeting her burden at the second step of the two-step anti-SLAPP process, Wickenkamp asserts a need for discovery before she can successfully attempt to meet that burden. Specifically, Wickenkamp requests the opportunity to depose the Hostetters, the Hamptons, Snook, and attorney Thomas Peachy regarding the subjective motivations of the *Hampton I* plaintiffs and their counsel for filing the *Hampton I* proceedings. As noted above, when a special motion to strike is filed pursuant to Oregon's anti-SLAPP statute in federal court, notwithstanding the statutorily-provided automatic stay of discovery, discovery must be permitted where it would be necessary for the plaintiff adequately to oppose the motion. *See Metabolife*, 264 F.3d at 846-847. Nevertheless, it would be inappropriate to defer proceedings in connection with the moving defendants' special motions to strike in order to permit discovery here, because the identified discovery could have no tendency to establish the objective baselessness of the *Hampton I* claims at the time they were filed, a necessary element of the wrongful-initiation exception. The objective baselessness of the claims can be determined only on the basis of the claims themselves and of the allegations underlying them. Analysis of the *Hampton I* claims and supporting allegations (and of their disposition) suggests that while they may have lacked ultimate merit they were neither frivolous nor uncolorable when filed. For that reason, I recommend that the court find that Wickenkamp cannot establish a probability of successfully overcoming the litigation privilege. In consequence, the moving HLG defendants'

---

articles about their accusers. The clear implication of Snook's remarks is that he wrote the referenced "damning" article at Lloyd Trackwell's behest, possibly for pay, for the purpose of using it as leverage in the *Hampton I* litigation. Snook also advises Rahn that if Rahn were a "Christian" expressing a desire to repent, he would "bury" his article.

motion and the moving ALG defendants' motion should each be granted *qua* special motion to strike as to Wickenkamp's false light claim, and that claim should be stricken from Wickenkamp's complaint.

## III. Adequacy of Wickenkamp's Pleadings to State a Claim

While I recommend dismissal for lack of subject-matter jurisdiction, I nevertheless consider, in the alternative, the moving HLG defendants' argument that Wickenkamp's allegations in support of her intrusion upon seclusion claim are inadequate to state a claim against them. Also in the alternative to dismissal for lack of subject-matter jurisdiction and additionally in the alternative to striking the false light claim, I consider the moving ALG defendants' argument that Wickenkamp's allegations in support of her false light claim are inadequate to state a claim.

### A. The Moving HLG Defendants' Motion to Dismiss Wickenkamp's Intrusion Upon Seclusion Claim to the Extent Alleged Against Them for Failure to State a Claim

As noted above, Wickenkamp alleges that the Hamptons intercepted and recorded her telephone conversations with Lloyd Trackwell, and subsequently provided information gleaned from those intercepted and recorded conversations to the moving HLG defendants and to Rahn, Knapp, and HK. It is Wickenkamp's position that such conduct constituted tortious intrusion upon her seclusion.

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B (1977). Accordingly, to establish a claim, a plaintiff must prove three elements: (1) an intentional intrusion, physical or otherwise, (2) upon the plaintiff's solitude or seclusion or private affairs or concerns, (3) which would be highly offensive to a reasonable person.

*Mauri v. Smith*, 324 Or. 476, 482-483 (1996).

I agree with the moving HLG defendants that Wickenkamp has not alleged a viable intrusion upon seclusion claim against them. It is Wickenkamp's allegation that the Hamptons effected the complained-of intrusion upon her private affairs; she does not allege that any of the other defendants participated in that aspect of the complained-of conduct. Wickenkamp does not offer argument to the contrary. In consequence, the moving HLG defendants' motion should be granted pursuant to Rule 12(b)(6) as to the intrusion upon seclusion claim to the extent alleged against Zachary and HLG, and the claim should be dismissed without prejudice as to those defendants. Moreover, the same reasoning applies with equal force to the intrusion upon seclusion claim to the extent alleged against Rahn, Knapp, and HK; the claim should likewise be dismissed without prejudice as to those defendants. By contrast, Wickenkamp's allegations are sufficient to state a claim against the Hamptons (although as discussed above this court may not *at this time* properly exercise personal jurisdiction over any of the Hamptons).

### B. The Moving ALG Defendants' Motion to Dismiss Wickenkamp's False Light Claim for Failure to State a Claim

The moving ALG defendants argue under Rule 12(b)(6) that Wickenkamp's false light claim is subject to dismissal for failure to state a claim on the same grounds offered in support of those defendants' anti-SLAPP motion: the statute of limitations and the litigation privilege. This court will only consider the moving ALG defendants' Rule 12(b)(6) arguments to the extent it has already rejected those same arguments in the context of the moving ALG defendants' special motion to strike. On the *arguendo* assumption that the arguments were found to be without merit for purposes of the anti-SLAPP statute, they would necessarily be similarly without merit in the context of Rule 12(b)(6). There can therefore be no good ground for granting the moving ALG

defendants' motion *qua* motion to dismiss for failure to state a claim.

## CONCLUSION

For the reasons set forth above, (i) the moving HLG defendants' motion (#59) to dismiss and/or to strike should be granted as to both of Wickenkamp's claims in their entirety for lack of subject-matter jurisdiction and for failure to comply with Judge Hernandez' order (#45) dated January 31, 2016, and should otherwise be denied as moot, (ii) all other pending motions should likewise be denied as moot, and (iii) Wickenkamp's claims should be dismissed with prejudice and a final judgment should be prepared.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately

///

///

appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

Dated this 14th day of July, 2016.

Honorable Paul Papak
United States Magistrate Judge